UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY ROE, *et al.*,

    Plaintiffs,

v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 2:18-cv-12528
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

# OPINION AND ORDER
# GRANTING IN PART MOTION FOR RECONSIDERATION [34]

Plaintiffs own vehicles made by Defendant Ford Motor Company. Each of their vehicles is equipped with Ford's Cyclone engine. In a Cyclone engine, the water pump is located inside the engine block. Plaintiffs say that due to the water pump's internal location, it can cause "catastrophic engine failure" if it breaks and, in all events, is expensive to fix. In fact, say Plaintiffs, their water pumps broke, and they each paid $1,200 to $7,600 in repairs. Plaintiffs believe that their water pumps should have lasted the useful life of their vehicles, 150,000 miles. They claim that Ford even represented that the pump would last that long. Plaintiffs also claim that Ford knew (or should have known) that the pumps would in fact fail before 150,000 miles (and that failure would result in very expensive repairs).

In resolving Ford's motion to dismiss, the Court found that Plaintiffs' factual allegations did not make it reasonable to infer that Ford knew (or should have known) that the pumps were defective, i.e., that pumps failed prematurely with enough regularity to alert Ford of a defect. Largely for that reason, the Court dismissed the majority of Plaintiffs' claims with prejudice. Plaintiffs sought reconsideration. In a prior order, the Court found that it did not err in concluding

that the amended complaint failed to state a claim for relief. But in their motion for reconsideration, Plaintiffs presented new information about water-pump failures. In light of this new information, the Court wondered whether Plaintiffs should have a chance to file a second amended complaint, i.e., whether dismissal of most of the claims *with prejudice* was error. So the Court asked for more briefing on that issue.

The Court has received and reviewed that additional briefing. For the reasons that follow, the Court will permit Plaintiffs to file a second amended complaint. Absent extraordinary circumstances, that complaint will be the last in this case.

I.

To understand the Court's ultimate disposition of this case, it is helpful to review how things got to where they are.

A good place to start is with the amended complaint. In that December 2018 filing, Plaintiffs alleged that Ford knew or should have known that their vehicles' water pumps would fail before the useful life of the engine (i.e., 150,000 miles) and that the result would be costly repairs or even engine failure if the pump failed. (*See* ECF No. 14, PageID.605–616.) Plaintiffs based their claim about Ford's knowledge on three sources of information: (1) Ford's testing of the engine and water pump, (2) consumer complaints about broken water pumps lodged with the National Highway Traffic Safety Administration (NHTSA), with Ford dealers, or on the Internet, and (3) water pump repairs by Ford dealers. (*See* ECF No. 14, PageID.606.)

In an August 2019 opinion addressing Ford's motion to dismiss, the Court found that Plaintiffs' allegations were "not sufficient to reasonably infer that Ford knew or should have known that water pumps in Cyclone engines were defective." *Roe v. Ford Motor Co.*, No. 2:18-CV-12528, 2019 WL 3564589, at *8 (E.D. Mich. Aug. 6, 2019). After all, Plaintiffs had not alleged

2

that the test results showed any problem with the water pump. As for consumer complaints, Plaintiffs did not say how many there were. Instead, Plaintiffs quoted from a mere 14 complaints to NHTSA and then vaguely alleged that these 14 complaints were a "small sample." (ECF No. 14, PageID.607.) The amended complaint also said nothing about the number of water pump repairs performed by Ford dealers. So the amended complaint did not make it plausible that the number of complaints about, and repairs of, water pumps was large enough for Ford to think that the water pumps were defective. Mainly for that reason, the Court dismissed all but two of the counts of the amended complaint. (Those two counts have since been resolved.) And, for several reasons (which are articulated below), dismissal was with prejudice.[1]

Two weeks later, Plaintiffs sought reconsideration. In their motion for reconsideration, Plaintiffs for the first time informed the Court (and, perhaps, Ford too) that from August 2014 to August 2019, NHTSA received about 200 complaints about failed water pumps in Ford vehicles. (ECF No. 34, PageID.1705.) And, also for the first time, Plaintiffs informed the Court (and, perhaps, Ford too) that between the filing of their amended complaint in December 2018 and the filing of their motion for reconsideration in August 2019, about 200 people had contacted their counsel about failed water pumps in their Ford vehicles. (*Id.*) This information came by way of a declaration filed by Tiffany Ehm, an employee of Kessler Topaz Meltzer & Check, LLP (KTMC).

In addressing Plaintiffs' motion for reconsideration, the Court concluded it had not erred in finding that the amended complaint had not adequately alleged Ford's knowledge of a water-pump defect. *Roe v. Ford Motor Co.*, No. 2:18-CV-12528, 2020 WL 289306, at *7 (E.D. Mich. Jan. 21, 2020). But the 400 or so additional complaints about broken pumps gave the Court pause.

---

[1] The Court allowed Plaintiffs to amend their state consumer protection act claims by following a specific protocol. *See Roe*, 2019 WL 3564589, at *17. It appears that Plaintiffs declined that option.

3

If the water pumps in Ford vehicles were regularly failing when the vehicles still had a lot of life left in them (say, a five-year-old Ford with only 75,000 mostly highway miles), perhaps that problem should have caught Ford's eye. So the Court decided to ask the parties "whether it would be reasonable to infer that Ford knew or should have known of the water pump defect presuming that the amended complaint included the information in Tiffany Ehm's declaration." *Id.* The Court gave Ford a seven-page response brief and Plaintiffs a three-page reply.

In their reply brief, Plaintiffs included more new allegations regarding Ford's knowledge. Plaintiffs now tell the Court that between their August 2019 motion for reconsideration and their February 2020 reply brief, KTMC has been contacted "by more than 600 additional consumers" "about water pump problems" in Ford vehicles (apparently, bringing the total to around 800). (ECF No. 39, PageID.1758.) Not only that, Plaintiffs attach to their reply brief a declaration by a professor of mechanical engineering; the professor opines that "to a reasonable degree of scientific and engineering certainty," "all vehicles with Ford Cyclone engines have the propensity for the water pump to fail prior to the expected lifetime of an internal water pump." (ECF No. 39, PageID.1775.)

## II.

### A.

On the one hand, there are good reasons to dismiss this case with prejudice.

For one, addressing the amended complaint was no minor task. Plaintiffs' amended complaint was really a small book: 282 pages (excluding exhibits) and 55 counts under 11 states' laws. (*See* ECF No. 14.) The amended complaint was so large, and the grounds for dismissing the 55 counts so varied, that Ford produced large (helpful) charts of the counts and their alleged deficiencies. (ECF No. 20, PageID.1328–1334.) And upon reviewing the complaint and the

correspondingly large motion to dismiss (both sides received excess pages), the Court went to work. Ultimately, it authored a lengthy opinion detailing its reasons for dismissal. Yet, after all of that, Plaintiffs say, "but wait, we have more facts to support our claim that Ford knew the pump was defective." That is hardly efficient. *See United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 n.2 (6th Cir. 2017) ("Where parties have fully argued the merits of a 12(b)(6) motion to dismiss and the district court has duly considered those arguments and issued an opinion resolving the motion, it is a stretch to say justice requires granting leave to cure the complaint's deficiencies as identified in adversarial pleadings and the district court's order[.]"). Nor it is it particularly fair. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) ("If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision." (internal quotation marks omitted)).

And fairness and efficiency concerns bring the Court to point two: Plaintiffs have not acted with the utmost diligence. Plaintiffs' motion for reconsideration—filed eight months after their amended complaint—was the first time Plaintiffs told the Court that there were 200 NHTSA complaints about broken pumps filed between August 2014 and August 2019. Yet seemingly nothing prevented Plaintiffs from having included a very similar allegation in their amended complaint (i.e., that from December 2013 to December 2018, there had been 200 complaints to NHTSA about the pumps). As for the 200 complaints of pump failures that KTMC received, it is not clear why KTMC could not have solicited those complaints before filing suit or at least before filing their amended complaint. Worse, it appears that almost all of the 200 complaints were

5

received by KTMC prior to this Court's ruling on Ford's motion to dismiss. Yet at no point prior to the Court's ruling did Plaintiffs seek to amend their complaint to include these 200 complaints.

Third, as to the 11 remaining plaintiffs, the information in Ehm's affidavit (the first one) makes their claims only a bit more plausible.

Start with the 200 NHTSA complaints. They are all from August 2014 to August 2019. Yet all but one of the 11 remaining plaintiffs in this case bought their Ford vehicles before August 2014. (*See* ECF No. 20, PageID.1331–1332.) So those 200 complaints do little to show that Ford had knowledge of a pump defect before selling Plaintiffs their 11 vehicles.

True, perhaps it is reasonable to infer that if there were 200 complaints between August 2014 and August 2019, then there were 200 complaints in the five years before that, August 2009 to August 2014. And that inference might help establish relevant knowledge, as all 11 plaintiffs bought their vehicles after August 2009. But that inference is not necessarily valid. Based on Plaintiffs' situations and the 14 NHTSA complaints quoted in the amended complaint, it is very rare for the water pump to fail in its first five years of use. And since the Cyclone engine was not used until 2007 (or, perhaps, in late 2006 for model year 2007 vehicles), NHTSA would have received only a trickle of complaints about the water pump before late-2011 or 2012. So it is not clear that NHTSA received many complaints about failed pumps before Plaintiffs bought their Ford vehicles in 2010 through 2018.

As for the 200 complaints received by KTMC, Plaintiffs do not tell the Court when those 200 water pumps failed. All but one of the 11 remaining plaintiffs bought their vehicles before 2015; so unless a significant portion of the 200 alleged failures occurred before 2015, they too could not make 10 of the plaintiffs' claims any more plausible. In any event, while Plaintiffs tell

the Court that *KTMC* has received 200 complaints, the question is Ford's knowledge of a defect, not the law firm's.

**B.**

That said, a few reasons justify allowing Plaintiffs to file one last complaint.

For one, Ford's first motion to dismiss (directed at the original complaint) did not focus on Plaintiffs' allegations of knowledge of the defect. (*See* ECF No. 12, PageID.504 (summarizing grounds for dismissal).) And so, arguably, Ford's second motion and this Court's opinion on that motion was the first time that Plaintiffs fully appreciated that their allegations about Ford's knowledge were deficient. So, arguably, the dismissal of Plaintiffs' amended complaint was somewhat akin to the dismissal of an unamended complaint. And in that scenario, the normal course is permit amendment. *See CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011) ("Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects.").

For two, given that 200 owners of Ford vehicles contacted KTMC between the filing of the amended complaint and the motion for reconsideration, and, apparently, 600 more between the filing of the motion for reconsideration and associated reply, it is now somewhat more plausible that water pumps in Cyclone engines failed frequently enough to have warranted Ford's attention. (Of course, it would be critical to know when Ford received these complaints (if at all) as compared to when the named plaintiffs bought their vehicles.)

For three, given that KTMC has been contacted by hundreds of owners of Ford vehicles about broken pumps, it seems that dismissing this case will not truly resolve anything. Even if dismissal was with prejudice, and even if that precluded the 11 remaining plaintiffs in this case

from filing a new suit, it seems like there would be 800 others who are not precluded and would likely want to sue. *See Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008) (outlining the limited situations in which non-parties would be precluded). And if a new case were filed, it would undoubtedly be reassigned to the undersigned as a companion to this case. *See* E.D. Mich. LR 83.11(b). So, practically, there is not much difference between a second amended complaint and dismissal only to start anew.

Finally, if the Court were to dismiss this case with prejudice only to address a virtually-identical suit, and if the plaintiffs in the second case were to win in the end, it would seem unfair that the 11 who first tried to represent the class would receive nothing.

### III.

Thus, while close, the Court will GRANT IN PART Plaintiffs' motion for reconsideration. In particular, Plaintiffs have 14 days to file their *final* complaint. Ford will then have 28 days to answer or move to dismiss that final complaint. If Ford opts for a motion, the opening and response briefs shall not exceed 35 pages; the reply shall not exceed 15 pages.

SO ORDERED.

Dated: March 17, 2020

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE